**In re Gwenda Ann GORDON, Debtor.**

**No. 06–01392–B13.**

United States Bankruptcy Court,
S.D. California.

Jan. 8, 2007.

---

Robert B. Shanner, Esq., Shanner & Shanner, San Diego, CA, for Debtor.

David L. Skelton, Esq., San Diego, CA, Chapter 13 Trustee.

## ORDER ON CHAPTER 13 TRUSTEE'S OBJECTION TO CONFIRMATION OF PLAN

PETER W. BOWIE, Chief Judge.

This matter came on regularly for hearing on the Chapter 13 Trustee's objection to confirmation of debtor's proposed plan.

The Court has subject matter jurisdiction over the proceeding pursuant to 28 U.S.C. § 1334 and General Order No. 312–D of the United States District Court for the Southern District of California. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

### Background

In order to fully engage in grappling with the Chapter 13 Trustee's objection, one must begin at the beginning, which for our purposes is 1997. On December 16, 1997 debtor filed a Chapter 13 petition (97–18541) under the name Gwenda Haywood. Trustee Billingslea objected to confirmation and, after hearing on May 13, 1998, the case was ordered dismissed.

A few days later on May 20, 1998, debtor refiled under Chapter 13. Trustee Billingslea objected to confirmation, asserting debtor was unable to make timely payments. Debtor contended she made some payments and, after a continued hearing during which she brought payments current, the plan was confirmed on December 2, 1998. Debtor immediately fell behind on payments, and on February 16, 1999 the trustee moved to dismiss. Debtor opposed the motion, contending her wages had been garnished in the interim two different times, and that she had new employment. The motion was twice continued to track payments, and then the debtor proposed to modify her plan to cut her payments by more than 50%. The trustee objected, contending the debtor had made only half the payments that had come due. After debtor agreed to grant a dividend of 20% to unsecured creditors, the modified plan was confirmed in September, 1999.

About a year later, the trustee brought another motion to dismiss for failure to make payments, at the reduced rate. Debtor acknowledged the arrears, saying she had quit work because of a death in the family, and had associated travel and funeral expenses. She proposed to bring the payments current by a lump sum payment to the trustee. After a continuance, the motion to dismiss was taken off calendar in December 2000.

In March, 2001 debtor again proposed to reduce her plan payment, followed by a step-up six months later. That motion was granted without opposition on May 1, 2001. Then, on October 11, the trustee filed another motion to dismiss for failure to make payments. Debtor opposed the motion, asserting her state disability payments had been improperly terminated, and that she had brought the plan payments current right after the motion was filed. The hearing was continued to track payments, and subsequently taken off calendar in February, 2002.

Then, in May, 2002, still another motion to dismiss was filed by the trustee for failure to make payments. Debtor requested a hearing, saying she was evaluating her options and whether to convert the case to Chapter 7. At the hearing on July 23, 2002 the case was ordered dismissed, and the trustee agreed to hold the order for five days to allow the debtor the opportunity to convert. She did not, and the order dismissing was entered August 5, 2002.

In September 2002, just a month after having her 1998 case dismissed for failure

to make payments, she purchased a 2001 Mercedes Benz C240 sedan (according to Schedule D of her third petition, filed October 30, 2003). Sometime prior to October, 2003 her last name changed to Gordon, and she had two daughters, ages 2 and 1. In her third petition, she listed she was separated and, as in 1998, she had just started a new job. The plan she proposed in her third case called for payments of $1,175 with 0% to unsecureds, whose claims exceeded $72,000 (not including $26,000 in priority tax debt, combined, to IRS and the FTB).

Trustee Skelton objected to debtor's 2003 proposed plan on multiple grounds. However, the trustee withdrew his objection when debtor agreed to increase her monthly payment to $1,200. The plan was confirmed in January, 2004. Then, in August, 2004 the trustee filed a motion to dismiss for failure to make payments. Debtor opposed, saying she was laid off from work, and had incurred expenses in traveling to the funeral of a family member. She indicated she had a new job with the Housing Commission and wanted to go forward. Debtor agreed to increase her plan payment to $1,540, and the motion to dismiss was subsequently withdrawn in December, 2004.

Just weeks later, the trustee filed another motion to dismiss for failure to make payments. At least one of the payments she tendered had been returned NSF. Again, she opposed the motion, saying she had replaced the NSF check and had made the regular January payment. She also indicated she had surgery and was expecting disability payments to commence. The motion was taken off calendar in March, 2005. Then, in June, the trustee filed still another motion to dismiss for nonpayment. Debtor opposed, saying she was temporarily out of work and her disability payments were stopped, but had resumed.

The hearing was continued to track payments, and subsequently taken off calendar in November.

In January, 2006 the trustee filed another motion to dismiss for nonpayment. Debtor opposed, saying she was trying to raise funds to pay down or pay off her plan, while admitting she had not been making the requisite payments. The hearing was continued, and on May 9, 2006, the case was ordered dismissed.

### Current Case

All of the foregoing (and not mentioning debtor's 1992 case) leads up to the present case, which was filed June 8, 2006, just three weeks after entry of the order of dismissal of the 2003 case. The 2006 case reveals the unsecured priority tax debt had grown to $43,500 and general unsecured debt had grown to over $77,000. Debtor proposed to pay $1,283 per month, with 0% to general unsecured creditors.

Trustee Skelton objected to confirmation, asserting that debtor had only made half the required payments in the 2003 case; that there was no change in circumstances from the 2003 case; that while debtor had the same job she did not pay 2005 income taxes to the IRS and FTB (totalling $8760); and that the Form B22C required a significant distribution to unsecured creditors based on debtor's average income for the six months immediately prepetition. The initial hearing on the motion was continued to file amended tax returns and to track payments. At the continued hearing debtor was given a date by which she had to be current or the case would be dismissed. A further declaration on changed circumstances was also required.

It appears from the submission by debtor's counsel on November 16, 2006 that debtor was not current as of that date, set by another judge of this court. The decla-

ration regarding changed circumstances was an unsworn and undated statement regarding debtor's health and election to work part time. Her counsel's submission also recognized the need to provide a pay stub from debtor's new employer. The court continued the confirmation hearing yet again, and directed that a declaration regarding adequate protection payments and one concerning a revised B22C Form be filed by December 20. In fact, the docket shows the B22C, and amended Schedules I and J were filed on November 21, the day before the hearing. Nothing further was filed on behalf of the debtor until December 29, when counsel submitted a terse proposal to reduce the proposed plan payment amount to $1,100, without any proposed modification noticed to any creditors. Counsel also asserted that debtor had made statutorily required adequate protection payments to the car creditor, and wrote: "Please see attached." However, there is no attachment in the court file. Lastly, counsel recognized debtor was in arrears to the trustee by $582 and would make "great efforts to bring these funds to the Trustee at time of hearing." The trustee indicated he had not seen any of counsel's documents because there had been no mail service on December 31, January 1 or January 2. While the trustee did not press the matter, it appears to the Court that debtor's counsel's submission on December 29 was untimely, given Judge Hargrove's directive that that declaration be filed by December 20. The Court does not know whether debtor had brought her payments to the trustee current, nor does the Court know whether debtor provided the trustee with evidence that she was current on adequate protection payments to the car creditor, since the evidence was not attached to counsel's declaration.

*Discussion*

■ Debtor's case raises a number of issues, a few of which the Court addressed in another recent case. As noted, the trustee objects to confirmation because debtor's current monthly income (CMI) and disposable income as calculated under 11 U.S.C. § 1325(b)(2) and § 101(10A), using Form B22C, would require debtor to provide a significant return to unsecured creditors. However, her plan does not so provide. This Court has stated its view that the B22C calculation is important, but not controlling on plan confirmation because § 1325(b)(1)(B) requires commitment of "projected disposable income" on a going-forward basis, not historical CMI or "disposable income" without regard to intervening changes in employment or other circumstances.

■ In the instant case, according to her statement, debtor has voluntarily reduced her work effort for health and child care reasons, so she has amended her Schedules I and J, as well as her Form B22C. In this Court's view, amendment of I and J may be appropriate, but amendment of B22C is not. The latter is a historical calculation, and it is what it is. The effort in this case to amend the B22C raises another important issue, however. Under the B22C filed at the outset of this case, debtor is an above-median income debtor, and her "applicable commitment period" is five years under § 1325(b)(4). Debtor's efforts to amend her B22C to reflect her expected future income, if allowed, would put her below median income, and reduce the applicable commitment period to three years (since she proposes a 0% plan).

The Court is persuaded that amendment of the Form B22C to reflect anticipated future income is not permitted under § 101(10A) or § 1325. As § 1325(b)(4) makes clear, the "applicable commitment

period" is determined by using "current monthly income" which, in turn, is defined in § 101(10A) as a historical average for the six months immediately prepetition. That does not change looking forward, and efforts to rewrite it are unavailing. In other words, the historical CMI, determined under § 101(10A), will determine the "applicable commitment period" under § 1325(b)(4) without consideration of "projected disposable income" under § 1325(b).

■■■ Which brings us back to the confirmability of debtor's proposed plan. To the extent debtor proposes a three year commitment period, the Court concludes the plan cannot be confirmed because by statute the "applicable commitment period" in her case is five years based on the B22C form filed at the outset of the case. And there are other problems, as well. As noted, debtor's plan calls for payments of $1,283 per month, but the amendments to Schedules I and J make clear she cannot make payments in that amount. Her counsel's submission on December 29 argued that $1,100 should be the payment amount, providing $718 to IRS and $326 to the car creditor each month. Counsel acknowledged there was also a debt to the Franchise Tax Board, but said debtor's ex-husband would pay that debt. No evidence of any commitment by the ex-husband has been provided, nor has any amended plan been filed.

### Conclusion

■ For all the foregoing reasons, the Court concludes debtor's plan, as presently proposed is not confirmable, and that debtor has been afforded multiple opportunities over the intervening almost seven months to make all necessary amendments. The Court has heard debtor's plea as a single mother with two small children, and understands debtor's need for a vehicle. But according to her Schedule F,

debtor has held creditors at bay for debts incurred as long ago as 1991 through employment of the Chapter 13 process. Debtor now has elected to reduce her work hours, without offering any corroboration by medical professionals, or even her own assertions under oath.

Accordingly, confirmation of debtor's proposed plan is denied, and the case is ordered dismissed on the trustee's motion, without further leave to amend.

IT IS SO ORDERED.